United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. DOBLE JR., et al.,

       Plaintiffs,

  v.

MEGA LIFE & HEALTH INS. CO.,

       Defendant.
_____/

No. C 09-1611 CRB

**ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

      Plaintiffs sue defendant Mega Life for breach a medical insurance contract in addition to tortious breach of the implied covenant of good faith and fair dealing and violation of California Business and Professions Code § 17200 .  Plaintiff Rochelle Doble is diabetic, and as a result of her disease developed an infection in her foot that ultimately required amputation.  Thereafter she was prescribed a "stump protector," a prosthetic lower leg, and a wheelchair.  She argues that defendant Mega was obligated to pay for those three items under the terms of her insurance contract.  Mega disagrees.

      Plaintiffs argue that the contract's "Diabetes Treatment Benefit" is ambiguous and should be construed in their favor and in favor of coverage.  Defendant argues that the Diabetes Treatment Benefit was mandated by California statute and that its language must therefore be interpreted according to traditional rules of statutory interpretation, rather than in favor of plaintiffs.  Defendants go on to argue that the relevant statute's legislative history

1  indicates that the legislature did not intend for the mandated coverage to extend to

2  prosthetics.

3      Although it is a close question, Plaintiffs have the better of the argument.  While

4  Defendant is correct that policy language mandated by the legislature is to be interpreted as a

5  statute, the crucial language in this policy was not, in fact, mandated by the state.  On the

6  contrary, the policy creates ambiguities not present in the statutory language.  These

7  ambiguous, non-statutorily mandated terms must be construed in plaintiffs' favor.  And

8  because a reasonable insured could interpret the language in question to cover prosthetics,

9  plaintiffs are entitled to partial summary judgment.

10                              **Background**

11      The facts relevant to this motions are rather few, and are largely not in dispute.

12  Plaintiffs Richard and Rochelle Doble are insured under a group health insurance policy

13  issued by MEGA to the National Association of the Self Employed ("NASE").  Nelson

14  Decl., ex. A.  The policy includes a Diabetes Treatment Benefit which provides:

> Covered Expenses include the fees charged for <u>equipment</u> and <u>supplies</u> for the treatment and management of insulin using diabetes, non-insulin using diabetes and gestational diabetes as Medically Necessary regardless of whether items are available without a prescription.
>
> Covered <u>Supplies include</u>:
>
> 1. Blood glucose monitors and testing strips.
> 2. Blood glucose monitors designed to assist the visually impaired.
> 3. Insulin pumps and all related necessary supplies.
> 4. Ketone urine testing strips.
> 5. Lancets and lancet puncture devices.
> 6. Pen delivery systems for the administration of insulin.
> 7. <u>Podiatric devices</u> to prevent or treat diabetes-related <u>complications</u>.
> 8. Insulin syringes.
> 9. Visual aides, excluding eyewear, to assist the visually impaired with proper dosing of insulin.

24  <u>Id.</u> at MEGA 4486 (emphases added).

25      In early 2007, Rochelle Doble developed an infection in her foot.  After a series of

26  unsuccessful treatments, doctors were ultimately forced to amputate her leg up to

27  approximately one-and-a-half inches below her knee.  Ng. Decl., ex. D.  When she was

28  discharged, her physician prescribed a stump protector, a prosthetic leg, and a wheelchair.

United States District Court
For the Northern District of California

1   <u>Id.</u> exs. L & M.  Despite some initial indications to the contrary, Mega ultimately concluded

2   that plaintiffs' policy did not cover these three items.  It therefore refused to pay.  This suit

3   followed.

4   **Legal Standard**

5   **1.  Summary Judgment**

6        Summary judgment is appropriate "if the pleadings, the discovery and disclosure

7   materials on file, and any affidavits show that there is no genuine issue as to any material fact

8   and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact

9   issue is "material" only if it could affect the outcome of the suit under the governing law.

10   <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 248 (1986).  A fact issue is "genuine" if the

11   evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Id.</u>

12        Special rules of construction apply to evaluating summary judgment motions:  (1) all

13   reasonable doubts as to the existence of genuine issues of material fact should be resolved

14   against the moving party; and (2) all inferences to be drawn from the underlying facts must

15   be viewed in the light most favorable to the nonmoving party.  <u>T.W. Elec. Serv., Inc. v. Pac.</u>

16   <u>Elec. Contractors Ass'n,</u> 809 F.2d 626, 630-31 (9th Cir. 1987).

17   **2.  Interpretation of Insurance Contracts**

18        "The interpretation of an insurance policy, like any other contract, is a matter of law."

19   <u>Badell v. Celtic Life Ins. Co.,</u> 159 F. Supp. 2d 1186, 1190 (N.D. Cal. 2001) (quoting <u>Smyth</u>

20   <u>v. USAA Prop. & Cas. Ins. Co.,</u> 5 Cal. App. 4th 1470, 1474 (1992)).  Under California law,

21   insurance coverage provisions are construed "so as to afford the insured the greatest possible

22   protection[.]" <u>MacKinnon v. Truck Ins. Exchange,</u> 31 Cal. 4th 635, 648 (2003) (citations

23   omitted).  Similarly, "[c]overage provisions are construed broadly in favor of the insured,

24   while exclusion provisions are construed strictly against the insurer."  <u>Smyth,</u> 5 Cal. App. 4th

25   at 1474.[1]  If a provision has more than one reasonable meaning, the ambiguity must be

26

27         [1]   It should be noted that California courts advise that "[i]f there is ambiguity . . . it is resolved
28   by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believes the
  promisee understood them at the time of formation."  <u>AIU Ins. Co. v. Superior Court,</u> 51 Cal. 3d 807,
  822 (1990).  If this does not resolve the ambiguity, only then should a court construe the ambiguous

"resolved in the insured['s] favor, consistent with the insured['s] reasonable expectations." <u>Safeco Ins. Co. of Am. v. Robert S.</u>, 26 Cal. 4th 758, 765-67 (2001).

However, in certain circumstances where the language of the policy was dictated by the legislature, rather than by the insurance company, that language is not construed against the insurer and is instead interpreted according to the rules of statutory construction. "What qualifies as language of the Legislature are standard form insurance policies which are required by state; provisions taken directly from statutory language which address the exact issue addressed by the provision in the policy; or a specific insurance policy definition which conforms in every material respect to the language used in the subdivision of the code which is being interpreted." <u>Nat'l Auto. & Casualty Ins. Co. v. Underwood, et al.</u>, 9 Cal. App. 4th 31 (1992) (citations omitted).

### Discussion

The question at issue in these cross motions is easily distilled: does the plaintiffs' insurance policy cover Rochelle Doble's stump protector, prosthetic lower leg, and wheelchair ("the disputed items")? The parties do not dispute a number of relevant facts. They agree that the three items were medically necessary under the terms of the policy. They also agree that the infection resulting in amputation was caused by Rochelle Doble's diabetes.

The policy's terms do not specifically provide for these three items by name, but it contains general terms that plaintiffs contend encompass all three. Plaintiffs make two general arguments in the alternative: they contend that coverage is required (1) by virtue of the phrase "[p]odiatric devices to prevent or treat diabetes-related complications," and (2) by virtue of the fact that the nine specific provisions in the contract are not exclusive, and that the phrase "equipment and supplies for the treatment and management of" diabetes reasonably includes all three disputed items.

---

language against the drafter. <u>Id.</u> Defendant here makes no argument that it believed the Dobles understood the policy in a certain way at the time of formation. Therefore, this rule will not be considered.

1    This Court finds the second argument persuasive and so does not need to reach the

2    first.

**1.  "[E]quipment and [S]upplies"**

4    As quoted above, the policy's Diabetes Treatment Benefit provides coverage for

5    "equipment <u>and</u> supplies." Nelson Decl., ex. A, at MEGA 4486 (emphasis added).  The

6    Benefit goes on to provide that "[c]overed Supplies include" a series of nine things.  <u>Id.</u>

7    However, "equipment" is never defined, nor does the policy provide either an illustrative or

8    definitive list of "equipment."

9    Plaintiffs make two arguments based upon this language: (1) the disputed items are

10   covered as "supplies" because the list in the policy is not exhaustive, and (2) the disputed

11   items are covered as "equipment," because the reasonable interpretation of that phrase covers

12   all three of the disputed items.

13   This Court concludes that plaintiffs are correct that the disputed items are covered as

14   "equipment."  As plaintiffs note, "equipment" is not defined in the Diabetes Treatment

15   Benefit.  In discerning its definition, this Court "must . . . give[] force and effect to every

16   provision, and not . . . render[] some clauses nugatory, inoperative or meaningless." <u>Ratcliffe</u>

17   <u>Architects v. Vanir Constr. Mgmt., Inc.</u>, 88 Cal. App. 4th 595, 602 (2001).  <u>See also</u> <u>Great</u>

18   <u>Western Drywall, Inc. v. Interstate Fire & Cas. Co.</u>, 161 Cal. App. 4th 1033, 1042 (2008)

19   ("[W]e must avoid interpretations that would create redundancy in policy language.").

20   Therefore, the list of "[c]overed [s]upplies" cannot directly limit the scope of the word

21   "equipment," because to so limit the definition would "create redundancy in policy

22   language."  Defendant's argument to the contrary - that coverage must be limited to the

23   examples of "covered supplies" - must therefore fail.

**2.  "[T]reatment and [M]anagement"**

25   While defendant appears to concede that "equipment" is, in isolation, an extremely

26   broad term, it focuses on the question whether the "equipment" at issue is "for the treatment

27   and management" of diabetes, as required by the policy.  Defendant argues that "treatment

28   and management" extends only to "basic supplies and equipment needed for proper glucose

**United States District Court**
For the Northern District of California

5

**United States District Court**
For the Northern District of California

control," not to anything compensating for a physical consequence of the disease.  Doc. 100, at 27.  Defendant suggests that this conclusion is dictated by the fact that the terminology in question is taken from California statute, and that the statute's plain meaning and legislative history indicate the prosthetics and wheelchairs are <u>not</u> covered by that language.  Defendant further contends that because this language was taken from a statute, it is not to be construed in favor of broader coverage.

The first question is therefore whether or not this language is to be construed in favor of the insured, or in light of the legislative history.  California courts have explained that policy language is to be interpreted as a statute in certain limited circumstances: "[1] standard form insurance policies which are required by statute; [2] provisions taken directly from statutory language which address the exact issue addressed by the provision in the policy; [3] or a specific insurance policy definition which conforms in every material respect to the language used in the subdivision of the code which is being interpreted."  <u>Nat'l Auto. & Casualty Ins. Co. v. Underwood, et al.</u>, 9 Cal. App. 4th 31 (1992) (citations omitted).  However, this principle does not apply where the insurer chooses "to paraphrase, not parrot, the statute."  <u>Nat'l Auto. & Casualty Ins. Co. v. Frankel</u>, 203 Cal. App. 3d 830, 836 (1988).

Defendant argues that its policy language was taken directly from California Insurance Code § 10176.61.  That section provides that insurers "shall include coverage for the following equipment and supplies for the management and treatment of [diabetes]."  The statute then lists nine categories of covered "equipment and supplies."  This list is indeed reproduced verbatim in the Doble's insurance contract.  Defendant therefore argues that it was precisely parroting the statutory language.

Defendant is incorrect.  The policy, unlike the statute, does not provide that coverage extends to "the following equipment and supplies."  Instead, the policy states that coverage extends to "the fees charged for equipment and supplies for the treatment and management of" diabetes.  The policy then goes on to say that "[c]overed [s]upplies <u>include</u>" the list of nine categories (emphasis added).  This language leaves the phrase "equipment" entirely undefined, and further raises the question of whether the scope of "[c]overed [s]upplies" is

limited to the nine categories, or whether that list is merely illustrative.  In the statute, however, there is no such ambiguity.  The statute dictates coverage for an exclusive list of "equipment <u>and</u> supplies" (emphasis added).  The term "equipment" in the policy becomes ambiguous not because of the way the statute is written, but rather because of how Defendant altered that language.  Indeed, the statutory language is in no way ambiguous.  In so paraphrasing the statute, introducing ambiguities that cannot be attributed to the Legislature, defendant loses the protection of the rules of statutory interpretation.  <u>See</u> <u>Frankel</u>, 203 Cal. App. 3d at 836 ("In its attempt to improve on the statutory terminology, National both created an ambiguity that does not exist in the statute and also lost its shelter from the rule requiring adverse constructions of ambiguous policy language.").

Defendant's attempt to narrow interpretation of the word "equipment" by isolated reference to other words in the Benefit that are identical to those in the statute is an improper attempt to narrow policy coverage based on a related, but materially different statutory provision.  As a California court has explained:

> Laypersons cannot be expected to know of statutory limitations or exclusions on coverage not contained in their insurance policies.  Trusting the language of their policies, laypersons will not seek coverage they think they have. . . . [T]his conclusion is not unfair to insurance companies because, unlike laypersons, insurance companies are fully capable of knowing about statutory restrictions on coverage and of incorporating the restrictions in the language of their policies.

<u>Utah Property & Casualty Ins. Guaranty Assn. v. U.S. Auto. Assn.</u>, 230 Cal. App. 3d 1010, 1021-22 (1992).  Any limitation in the relevant statute was not reproduced on the policy language.  Therefore, the rule requiring an adverse construction applies.

What remains is to determine whether the policy, when "construed broadly in favor of the insured," covers the disputed items.  <u>Smyth</u>, 5 Cal. App. 4th at 1474.  As noted above, this Court need not conclude that the <u>best</u> interpretation of the policy's language provides for coverage, but only that such an interpretation is reasonable.  <u>See</u> <u>Safeco Ins. Co. of Am.</u>, 26 Cal. 4th at 765-77 (explaining that interpretation of an ambiguous term must protect "the objectively reasonable expectations of the insured").  The question, then, is whether it would have been reasonable for plaintiffs to expect coverage.

United States District Court
For the Northern District of California

This Court concludes that an insured could reasonably have expected "equipment" as used in the policy to apply to the three disputed items. First defendants do not argue that the disputed items are not "equipment" of some sort. Second, as for the meaning of "treatment and management of" diabetes, defendant argues that the only reasonable interpretation of this phrase extends it to "basic supplies and equipment needed for proper glucose control." Doc. 100, at 27. This cannot be right. The policy's own list of "[c]overed [s]upplies" belies such a conclusion, as it includes "[p]odiatric devices to prevent or treat diabetes-related complications" (emphasis added). Whatever constitutes a "podiatric device," it is not used to control glucose. On the contrary, that provision explicitly extends coverage to "complications" related to diabetes. Therefore, given that an insured reading this policy would see that a supply addressing a "diabetes-related complication[]" is considered to be "for the treatment and management" of diabetes, it would be reasonable to conclude that other "equipment" addressing diabetes-related complications would be similarly covered. Because defendant does not dispute that plaintiff's amputation was a "diabetes-related complication," and because the policy can be reasonably interpreted to extend to treatment of diabetes-related complications, plaintiffs must prevail.

Defendant argues that such an interpretation fails to take into the context of the entire policy in violation of California Civil Code § 1641. Section 1641 provides that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Defendant once again suggests that the list of nine "covered supplies" indicates that the scope of "treatment and management" is limited to supplies that "maintain[] control over glucose levels." Doc. 100, at 29. This is simply false. Defendant ignores the provision covering podiatric devices, which do not maintain control over glucose levels. Given that example, a reasonable insured could expect coverage for equipment related to treatment of a complication.

Defendant also suggests that this Court errs by considering a layperson's interpretation of policy terms, noting that certain definitions are "common knowledge in the diabetic and medical industry . . . ." Doc. 90 at 17. California law is to the contrary. The

United States District Court
For the Northern District of California

California Supreme Court has advised that the controlling definition of a policy term is that assigned to the term by a reasonable layperson.  A court "must attempt to put itself in the position of a layperson and understand how her or she might reasonably interpret the exclusionary language."  MacKinnon v. Truck Ins. Exchange, 31 Cal. 4th 635, 649 (2003).  Similarly, "ambiguous terms are resolved . . . consistent with the insureds' reasonable expectations."  Safeco Ins. Co. of Am., 26 Cal. 4th at 765.  If an insured's reasonable expectation is in some tension with a specialists's conclusion, the reasonable expectation controls. Cf. id. (noting that complex legal distinctions "are not objectively within the reasonable expectations of the insured").

One final argument made by defendant is worth noting.  Defendant points out that other provisions in the policy explicitly cover certain prosthetics, and that similar language would have been used in the diabetes benefit if it had been intended to cover prosthetics.  Defendant points to the coverage for breast cancer and laryngectomies, which both require coverage for prosthetic devices.  The laryngectomy provision covers "Prosthetic Devices to restore a method of speaking for the Insured Person incident to a covered laryngectomy surgical procedure."  Nelson Decl., ex. a at MEGA 4486.  The breast cancer provision covers "the services and supplies for Prosthetic Devices or reconstructive surgery to restore and achieve symmetry for the patient incident to a covered Mastectomy."  Id. at MEGA 4484.

This comparison is unpersuasive, as the language and structure of these various provisions are different.  The laryngectomy and breast cancer provisions extend only to prosthetics and do not cover any broader range of equipment or supplies.  In other words, these provisions are extremely narrow and targeted, while the Diabetes Benefit--even when read as Defendant urges--provides coverage for various categories of devices.  Therefore, the use of narrow and targeted words in a narrow and targeted provision tells us very little about how to interpret broad language used elsewhere in the contract.  It cannot be that a policy's provision of specific equipment with regard to one disease (such as prosthetics in the breast cancer benefit) indicates that similar equipment cannot be provided by more general terms.  Such a rule would undermine the plain meaning of policy language and would frustrate

9

1   reasonable expectations, as broadly defined words would be subject to implied limitations

2   plucked from elsewhere in a contract.  To quote the California Supreme Court, "[i]f the

3   insurer intended to restrict its coverage to the extent of its defense in the present case, it

4   should have used language clearly stating that purpose."  Island v. Fireman's Fund Indem.

5   Co., 30 Cal. 2d 541, 548 (1947).

6                                              **Conclusion**

7          For the reasons stated above, this Court therefore GRANTS plaintiffs' motion for

8   partial summary judgment and DENIES defendant's motion.

9          **IT IS SO ORDERED.**

10

11

12  Dated: September 15, 2010                    _____
                                                 CHARLES  R. BREYER
13                                               UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California